# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEPHEN TOLIVER,

                    Petitioner,

v.

DENISE SYMDON,

                    Respondent.

Case No. 17-CV-625-JPS

**ORDER**

Petitioner, Stephen Toliver ("Toliver"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his state conviction and sentence were imposed in violation of the Constitution. (Docket #1). The parties have fully briefed their respective positions on Toliver's asserted grounds for relief. For the reasons stated below, the Court finds that Toliver's petition is without merit and must be denied.

## 1.      STANDARD OF REVIEW

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to

review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petition must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state

court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id*. This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations against the petitioner are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. *Id*. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)).

"'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, however, an unreasonable factual determination means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

2.    **BACKGROUND**

Toliver's case has a long and complicated procedural history, involving several state postconviction motions and two prior grants of habeas relief by federal courts. The issues presented for decision at this time are relatively narrow, however, and so the Court will confine itself to those facts necessary for disposition of this petition.

In 1991, the State of Wisconsin charged Toliver and his brother with first-degree intentional homicide for causing the death of Tina Rogers. The jury convicted Toliver. Toliver's direct appeal and two collateral attacks under Wis. Stat. § 974.06 were unsuccessful. However, in 1999, this Court granted Toliver's habeas petition on the ground that he was denied his right to counsel during direct appeal. *Wisconsin ex rel. Toliver v. McCaughtry*, 72 F. Supp. 2d 960, 979 (E.D. Wis. 1999). In response, Wisconsin reinstated Toliver's direct appeal rights.

Toliver's new direct appeal alleged in part that his trial counsel was ineffective. The state courts rejected Toliver's arguments, as did this Court when he filed another habeas petition. The Seventh Circuit, though, remanded for an evidentiary hearing on the ineffective-assistance claim. *Toliver v. McCaughtry*, 539 F.3d 766 (7th Cir. 2008). This Court granted the petition after the hearing, and the Seventh Circuit affirmed on appeal. *Toliver v. Pollard*, 688 F.3d 853, 862–63 (7th Cir. 2012).

The State then elected to retry Toliver. In January 2013, Toliver and the State reached a plea agreement for Toliver to plead guilty to one count of felony murder, in violation of Wis. Stat. § 940.03, and one count of hiding a corpse, in violation of Wis. Stat. § 940.11(2). The maximum penalty for these charges, combined, was thirty-five years with mandatory release after two-thirds of the sentence was served. *See* Wis. Stat. § 302.11(1).

If the court sentenced Toliver to the maximum term, he would have been released in under two years. The parties based this conclusion on Toliver's having 7,917 days of sentence credit from his date of arrest on May 24, 1991 until the date of sentencing on January 25, 2013. The court sentenced Toliver to consecutive sentences of thirty years for the felony murder and five years for hiding a corpse and awarded him 7,917 days of credit.

The court also ordered 297 days of pretrial sentence credit from the day of Toliver's arrest on May 24, 1991 until his original sentencing on March 16, 1992. The Wisconsin Department of Corrections ("DOC") informed the circuit court that it would apply the 297 days of credit to Toliver's sentence, but counting from September 5, 1992, rather than the date of the original sentencing hearing on March 16 of that year. This was because Toliver's original sentence was consecutive to another sentence he was already serving, and he did not start serving the instant term until September 5, 1992.

On May 3, 2013, DOC again contacted the circuit court, this time to inform it that hiding a corpse was not a crime when Toliver acted in 1991. Such conduct was not criminalized until May 1992. A status conference was held in the trial court on June 26, 2013, where defense counsel told the

trial court that Toliver's plea to felony murder and hiding a corpse should be vacated in light of the information that hiding a corpse was not an offense in 1991. Defense counsel told the court that Toliver wanted to proceed to trial on the original charge of first-degree intentional homicide. The State informed the court at this hearing that it was offering to Toliver a plea where he would be mandatorily released in ten months.

The parties reconvened the next day, on June 27, 2013. Defense counsel told the court that the parties agreed that the felony murder conviction would not be vacated, that the hiding a corpse conviction would be vacated, and that Toliver would plead guilty to first-degree reckless endangerment under Wis. Stat. § 941.30(1). The hearing transcript reads, in relevant part:

> [DEFENSE COUNSEL:] Your Honor, I believe we have a resolution of the matter. And if you wish, I'll put forth the status of what we learned since the plea and sentencing that occurred earlier this year. That the Count 2 of the previous information, which charged the violation of the hiding the corpse statute, that the official date of enactment on that offense occurred probably about a month to six weeks after the offense date in this. So by operation of law, that Count 2 plea and sentencing becomes null and void. In review of that, Mr. Williams and I have conferred. And I conferred with Mr. Toliver the proposal. We have a new information that's filed today. He is prepared while the information leaves Count 1 in there, the Count 1, plea and sentencing has already taken place. The Court has imposed a sentence on that.
>
> THE COURT: On the felony murder that says the same – that's not being vacated?
>
> [DEFENSE COUNSEL]: That's correct. So it would be necessary today to take a plea to Count 2, which is first-degree reckless endangerment contrary to Section 941.30(1), under the statutes of -- Wisconsin Statutes of 1991.

(Docket #9-13 at 2–3). Counsel for the State concurred. *Id.* at 4.

The Court then confirmed Toliver's agreement to reaffirm his guilty plea to felony murder:

> THE COURT: Okay. So you understand, sir, Count 1 is not being vacated. We're vacating Count 2. And you're entering a plea apparently to the first-degree recklessly endangering safety.
>
> THE DEFENDANT: Yes.

*Id.* at 4–5.

The State agreed to recommend that Toliver be sentenced to five years in prison for reckless endangerment, to run consecutive to his 30-year sentence for felony murder. The parties agreed that the previous sentence imposed for felony murder was consecutive to the reckless endangerment count, but concurrent to any other sentence.

The parties further agreed Toliver was entitled to pretrial credit from the date of his original sentence on March 16, 1992, to June 27, 2013—a total of 7,793 days—and that the total sentencing credit with pretrial incarceration was 8,070 days. This meant a mandatory release date in ten months, during April 2014. These were defense counsel's calculations, but the State and the court concurred. The circuit court accepted Toliver's plea, and sentenced him to five years in prison on the reckless endangerment charge, consecutive to his felony murder sentence. The court awarded him 8,070 days of credit.

As noted, under this agreement, Toliver's mandatory release date would occur approximately ten months from the date of sentencing, which would have been April 2014. Then, on August 29, 2013, DOC

informed the circuit court that Toliver's sentence began on September 5, 1992, not March 16, 1992, and that he was only entitled to 7,447 days of sentencing credit. On September 11, 2013, the circuit court issued an order stating that DOC was required by statute to credit Toliver with confinement from March 16, 1992. DOC responded that it could not credit Toliver for time served before September 5, 1992. On December 20, 2013, the circuit court issued another order, stating that Toliver's sentencing credit began on September 5, 1992. The court reduced Toliver's pretrial credit from 297 days to 67 days because he was not entitled to credit for time spent in custody on a different charge, citing *State v. Gavigan*, 362 N.W.2d 162, 165 (Wis. Ct. App. 1984). DOC then informed Toliver that his mandatory release date was March 18, 2016.

In June 2014, Toliver moved to withdraw his pleas pursuant to Wis. Stat. § 809.30 on three different grounds. They were all based on his contention that he pled guilty believing his mandatory release date was in April 2014. He asserted that (1) he did not knowingly, voluntarily, and intelligently enter his pleas, (2) his counsel was ineffective, and (3) the circuit court's plea colloquy was defective. In response, the State asked the circuit court to modify Toliver's sentence so he would be released immediately. Toliver opposed sentence modification, insisting instead that he be allowed to withdraw his pleas.

The trial court held a hearing on Toliver's motion on October 31, 2014. At this hearing, Toliver testified that he wanted to withdraw his guilty pleas and proceed to trial in June 2013 when he was informed that hiding a corpse was not an offense in 1991 and that he was not entitled to the sentence credit ordered by the trial court. He stated, "[s]o when I came down in June, my mindset was on going to trial." (Docket #9-14 at 28).

However, Toliver testified that his trial counsel told him before he pled guilty in June 2013 that if he accepted the State's plea offer, he would be released from prison in April 2014 based on the mandatory release date calculation. *Id.* at 26. Toliver said that "[a]fter that, I said I'll take the deal." *Id.* at 29.

When asked whether he considered the sentencing credit to which he thought he was entitled when he entered his guilty plea, Toliver testified "[t]hat was the only reason I took it." *Id.* at 31. Toliver also testified that he would not have pled guilty if he knew he was not entitled to enough sentencing credit to allow him to be released in April 2014, saying "[n]o, I wouldn't have accepted it because I wasn't going to accept it on June 25. I demanded a trial." *Id.*

The trial court denied Toliver's motion to withdraw his plea in a written decision issued December 1, 2014. The trial court concluded that Toliver did not demonstrate that his anticipated April 2014 release date was crucial to his decision to plead guilty. However, the trial court modified its June 2013 sentence to provide Toliver's immediate release from custody. Toliver was released from prison on December 3, 2014, and is currently serving a 10-year term of extended supervision.

Toliver appealed, raising the same claims from his plea withdrawal motion. In addition, he asserted that his pleas were premised on a legal impossibility and claimed that the circuit court should have vacated his felony murder conviction when it vacated the hiding the corpse conviction. The Wisconsin Court of Appeals rejected these claims in a decision dated December 15, 2015. (Docket #9-5). The Wisconsin Supreme Court later denied Toliver's petition for review.

Toliver filed this habeas petition on May 2, 2017. (Docket #1). He asserts three grounds for relief: (1) he did not knowingly, voluntarily, and intelligently enter his pleas because he thought that he would be released in April 2014; (2) the trial court violated due process by not allowing him to withdraw his guilty plea to felony murder along with vacating his hiding a corpse conviction; and (3) trial counsel was ineffective for miscalculating his mandatory release date. *Id.* at 6–8.

3.   **ANALYSIS**

3.1   **Validity of Toliver's Plea**

Toliver's first claim is that the Wisconsin Court of Appeals erred in rejecting his argument concerning the voluntariness of his plea.[1] A guilty

---

[1]Respondent's first challenge to this ground is that because the state court called Toliver's argument "conclusory," it relied on an adequate and independent state ground for decision that is not reviewable in this Court. (Docket #10 at 9–11). "When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (citations omitted). The problem with this assertion is that it is simply not supported by the appellate court's opinion. True enough, the court thought Toliver's argument was "nothing more than conclusory statements," (Docket #9-5 at 9), but this was a comment upon the weight of the argument. The court did not actually enforce any procedural rule against consideration of underdeveloped or unsupported arguments. *See Harris v. Reed*, 489 U.S. 255, 261 (1989) ("'[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.'") (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).

Indeed, this is made clearer inasmuch as the Court of Appeals *did* enforce such a rule against Toliver's argument that his plea agreements were premised on a legal impossibility. *Id.* at 9 n.2 (citing *M.C.I., Inv. v. Elbin*, 430 N.W.2d 366, 369 (Wis. Ct. App. 1988)). But the "legal impossibility" point was just one piece of the overall argument, and the state court's procedural disposal of it does not rob this Court of the ability to review the decision on the overarching ground for relief.

plea must be knowing, voluntary, and intelligent. *Parke v. Raley*, 506 U.S. 20, 29 (1992). Whether a plea was entered knowingly, intelligently, and voluntarily is determined from "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). Guilty pleas "are accorded a great measure of finality" because they "are important components of this country's criminal justice system." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). As a result, the defendant bears the burden of proving that the plea he entered was invalid. *Marx v. United States*, 930 F.2d 1246, 1250 (7th Cir. 1991).

To enter a valid plea, a defendant must, among other things, have full awareness of the plea's "direct consequences," *Brady*, 397 U.S. at 755, which are characterized as its "immediate[] and automatic consequences," *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989). A defendant does not need to be informed of or understand any collateral consequences of a plea to validly enter it. *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008).

---

Respondent also argues in her reply that Toliver has waived any argument about the voluntariness of his plea because his entire treatment of this ground in his brief consists of a single footnote to his ineffective-assistance argument. Toliver contends that "[his] claim that his plea was not voluntary is intertwined with his claim that his counsel was ineffective." (Docket #12 at 13 n.1). Respondent says that such paltry attention to the claim waives it. (Docket #13 at 1–2). The Court is inclined to agree; a single-sentence footnote, bereft of explanation or citation to authority, is not the way to present arguments to the Court for decision. *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013); *Duncan v. State of Wis. Dep't of Health & Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999). Indeed, considering all the filings in this case together, Toliver has now offered only five sentences, and no citations to law, in support of this ground. *See* (Docket #1 at 6–7); (Docket #12 at 13 n.1). Nevertheless, in the interest of completeness, and because Toliver's claim is undoubtedly without merit, the Court will address it.

Toliver's expectation as to his release date does not undermine the validity of his plea. For purposes of this claim, this is true whether one accepts at face value—as the Court of Appeals did not—that Toliver would not have pled guilty had he known of the release date miscalculation. A mistake as to a release date or sentence credit is, put simply, a collateral matter not central to the plea itself.

To be sure, "[a]lthough the Supreme Court has not defined the 'direct consequences' of a guilty plea," it must at a minimum include notification of the "maximum sentence for which a defendant is eligible." *See Dalton v. Battaglia*, 402 F.3d 729, 733 (7th Cir. 2005); Fed. R. Crim. P. 11(b)(H)–(M). Indeed, there can be "no consequence of a defendant's guilty plea more direct, immediate, and automatic than the maximum amount of time she may serve as a result of her plea." *Dalton*, 402 F.3d at 733; *Trueblood v. Davis*, 301 F.3d 784, 786 (7th Cir. 2002).

The story is different for a defendant's actual expectations regarding the sentence he will receive or the time he will actually serve. In that case, "[a] defendant's miscalculation—even a gross miscalculation—anent the likely length of his sentence does not render a guilty plea unknowing, involuntary, or unintelligent in any legally cognizable sense." *United States v. Torres-Rosa*, 209 F.3d 4, 9 (1st Cir. 2000). Incorrect estimates of sentences do not provide a reason to withdraw a plea. *United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991). Put differently, "[d]ue process does not require the government or the District Court to predict a defendant's sentence before a plea agreement is accepted." *Id.*; *see also United States v. Alvarez-Quiroga*, 901 F.2d 1433, 1438–39 (7th Cir. 1990) ("The court clearly informed the defendant what his sentence could be, from 10 years to life, and so did his counsel," and so it was unavailing that he later "tried to

convert some expressed hopes for a sentence less than the minimum into a failure by the trial court to fully advise him of the sentence possibilities."); *United States v. Smith*, 440 F.2d 521, 530 (7th Cir. 1971) ("An erroneous appraisal" of factors such as "the chance of probation or parole" would touch upon "the wisdom of the plea, but does not make it involuntary.").

Though Wisconsin decisions are not controlling here, *State v. Yates*, 619 N.W.2d 132 (Wis. Ct. App. 2000), provides a good analogy. There, the Wisconsin Court of Appeals found that a defendant's presumptive mandatory release date was not a direct consequence of his plea. *Yates*, 619 N.W.2d at 135. The court reasoned that the actual date of release could be affected by the defendant's own actions, including whether he cooperated in any required treatment or counseling. *Id.* at 135–36. The release date might also be affected by the parole commission, which enjoys broad discretion to deny an inmate release if it determines that his rehabilitation has fallen short or he remains a threat to the public. *Id.* For these reasons, whether the defendant would actually be released on the presumptive date was, at the time of his plea, "purely speculative," "dependent on factors other than the plea itself," and therefore "[did] not automatically flow from the plea." *Id.* at 136. Therefore, the presumptive release date could not be characterized as a direct consequence of his plea that could support a withdrawal. *Id.*

Like *Yates*, here Toliver's sentence credit, admittedly mistakenly calculated, was not a direct consequence of his plea because it did not directly, immediately, and automatically result therefrom. *See Dalton*, 402 F.3d at 733. The actual amount of credit was subject to review by the DOC when it admitted Toliver at the prison and calculated his release date. *See* Wis. Admin. Code § DOC 302.21. If Toliver later thought the amount was

wrong, he was entitled to seek additional credit. *See* Wis. Stat. § 973.155(5). Further, calculating sentence credit in 2013 for a prisoner confined since 1991 on multiple sentences is not necessarily a straightforward matter. Because the amount of credit that Toliver was due was open to revision, it was not a direct consequence of his plea. *See Yates*, 842 619 N.W.2d at 136 (agency discretion over a particular consequence of a plea suggests it is collateral).

Moreover, the calculation was concurred in by all parties and the court, as the transcript of the June 27, 2013 hearing shows. *See* (Docket #9-13 at 8–9). His mandatory release date in April 2014 was not, as Toliver might have believed, a commitment made to him; it was simply the parties' (erroneous) expectation. *See Brady*, 397 U.S. at 755 (direct consequences include "the actual value of any commitments made to him by the court, prosecutor, or his own counsel"). As a result, this Court cannot say that the Wisconsin Court of Appeals acted unreasonably in rejecting this claim.

### 3.2    Vacating the Pleas

Toliver's next habeas claim is that he was denied due process when he was not allowed to withdraw his guilty plea to the felony murder charge at the same time his hiding a corpse conviction was vacated. The parties sometimes state this claim a little differently, contending that due process required both convictions to be vacated at once. Either way, the claim lacks merit.

At the outset, the Court must dispose of Respondent's contention that the claim is procedurally defaulted. (Docket #10 at 18–20). This Court cannot consider Toliver's habeas claim unless it has first been "fully and fairly presented. . .to the state appellate courts," thereby giving the courts

a "meaningful opportunity to consider the substance of the claim[] that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); 28 U.S.C. § 2254(b)(1)(A). Fair presentment requires that the petitioner apprise the state courts of the constitutional nature of the claim, but it "does not require hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (citation omitted). A petitioner fairly presents a federal claim if he frames it "in terms so particular as to call to mind a specific constitutional right." *Id.* at 815.

Toliver argued to the Wisconsin Court of Appeals that he should be allowed to withdraw his guilty plea as to felony murder because the trial court did not have subject-matter jurisdiction to impose a sentence as to the other, non-existent offense, hiding a corpse. According to him, this meant that his plea agreement as a whole was invalidated and thus the trial court had no jurisdiction to sentence him on any charge. *See* (Docket #9-5 at 10).

Respondent accurately notes that Toliver did not cite the federal Constitution in his argument to the Wisconsin Court of Appeals, nor did he mention the phrase "due process." *See* (Docket #10 at 18–20). But Toliver is likewise correct when he says that "[a] claim that the circuit court did not have jurisdiction to sentence him for a crime that did not exist. . .necessarily implies that he was denied his federal constitutional right to due process." (Docket #12 at 15); *Yellowbear v. Wyo. Attorney Gen.*, 525 F.3d 921, 924 (10th Cir. 2008); *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) (recognizing that "[o]riginally, criminal defendants whose convictions were final were entitled to federal habeas relief only if the

court that rendered the judgment under which they were in custody lacked jurisdiction to do so").

The Wisconsin state cases Toliver cited below understandably do not mention the federal Constitution as the basis for their subject-matter jurisdiction. *See*, *e.g.*, *State v. Briggs*, 579 N.W.2d 783 (Wis. Ct. App. 1998); *State v. Cvorovic*, 462 N.W.2d 897, 898 (Wis. Ct. App. 1990) ("A court does not have subject matter jurisdiction over a nonexistent offense."). Yet subject-matter jurisdiction is undeniably a familiar constitutional constraint in both state and federal courts. *Anderson*, 471 F.3d at 815. The only difference is that federal courts portray the claim as a deprivation of due process. That convention aside, it is indisputable that the objection to jurisdiction was fully and fairly presented to the Wisconsin courts. As a result, the Court concludes that the claim is not procedurally defaulted.

Toliver's argument is, nevertheless, unavailing. The state appellate court found that Toliver's appeal "[did] not stem from the conviction of a non-existent crime." (Docket #9-5 at 11). Instead,

> Toliver was convicted of crimes that are recognized by statute, based on a plea agreement he and the State negotiated. Toliver agreed that the felony murder plea would remain in tact [sic], and he agreed to substitute a charge of first-degree reckless endangerment for the charge of hiding a corpse. The circuit court confirmed with Toliver that he understood which plea was being vacated. Toliver's claim that the circuit court lacked jurisdiction over Toliver's felony murder plea is thus without merit.

*Id.*

This Court agrees that Toliver's jurisdictional objection is baseless.[2] Toliver asserts that his first plea agreement, in which he pled guilty to felony murder and hiding a corpse, is unenforceable in light of the parties' mutual mistake as to its material terms. *See* (Docket #12 at 15). As a general legal principle, Toliver's statement is true; a plea agreement stands or falls as a whole, and a mutual mistake as to a material term will invalidate the entire agreement. *See United States v. Bradley*¸ 381 F.3d 641, 648 (7th Cir. 2004). But, as the Wisconsin Court of Appeals recognized, that first plea agreement does not form the basis for the instant conviction and sentence. Thus, there is no subject-matter jurisdiction problem here.

The record of the June 27, 2013 hearing irrefutably establishes that Toliver agreed to plead guilty to felony murder and accept the trial court's previously imposed sentence. At the hearing, the parties noted that the State filed a new two-count information containing one charge of felony murder and one charge of reckless endangerment. At that point, the court presumably could have performed a new plea colloquy and sentencing as to the felony murder count. But it would have been a wasted effort; the parties agreed that the plea would still be guilty and the sentence would remain the same as before. Although the court characterized its maneuver as not vacating the felony murder plea, in reality this was merely language of convenience. The truth of the of the matter is that Toliver effectively renegotiated his plea agreement to encompass a guilty plea to

---

[2]Toliver says that the Wisconsin court unreasonably determined as a matter of fact that he had effectively waived his objection to the trial court's subject-matter jurisdiction. (Docket #12 at 13–14). But the Court of Appeals' determination was a legal one, not a factual one. Thus, there is no reason for the Court to set aside the AEDPA's deferential standard of review for this ground. *See Carlson*, 526 F.3d at 1024.

both counts—felony murder and reckless endangerment—in the new information.

Because he entered a new and valid plea as to those charges, Toliver waived any constitutional claim that may have arisen prior to it. *Gomez v. Berge*, 434 F.3d 940, 942 (7th Cir. 2006). There are, of course, exceptions to the notion that a guilty plea waives all prior claims. *See id.* at 943. Here, however, Toliver has not directed this Court to any authority suggesting his is such a claim. Indeed, it would be exceedingly odd to permit a criminal defendant to circumvent his plea as to one offense in order to complain about some other offense which was not the subject of the plea. If the other offense formed no part of his conviction or sentence, what is the defendant protesting? Thus, the Court finds that this is not the type of claim that could have survived Toliver's plea, and it is therefore without merit.

### 3.3    Ineffective Assistance of Counsel

Toliver's final claim is that his counsel was constitutionally ineffective in erroneously calculating his release date. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on his ineffective assistance claim, *Strickland* requires that Toliver prove his counsel's performance was deficient and prejudicial. *Id.* at 687–88, 694. Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 687–88. A petitioner must overcome a strong presumption that trial counsel performed adequately. *See Bieghler v. McBride*, 389 F.3d 701, 707–08 (7th Cir. 2004). To prove prejudice, Toliver must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, this means Toliver must demonstrate that there is a reasonable probability that, but for counsel's error, he would not have pled guilty, and instead would have insisted upon a trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"Surmounting *Strickland*'s high bar is never an easy task." *Richter*, 562 U.S. at 105 (quotation omitted). Applied *de novo*, *Strickland* is deferential to counsel. *Id.* Establishing that a state court's application of *Strickland* was unreasonable in a federal habeas corpus proceeding is doubly difficult. *Knowles*, 556 U.S. at 123. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

On this claim, the Wisconsin appellate court concluded that Toliver had failed to prove prejudice because he had not demonstrated that he would have gone to trial had he known his correct release date. (Docket #9-5 at 12). The court reasoned:

> [t]o establish a reasonable probability that counsel's miscalculation of Toliver's sentencing credit affected the plea decision, Toliver must show that he would not have pled guilty had he known his mandatory release date would extend past April 2014. The record establishes that Toliver intended to go to trial as late as June 25, 2013, potentially on a charge of first-degree intentional homicide, but ultimately accepted the plea bargain with the encouragement of his family and defense counsel. Nothing in the record suggests that Toliver would have rejected the plea deal, or that his family and counsel would have insisted on trial, if Toliver's mandatory release date were later. Indeed, if Toliver had gone to trial and was found guilty, he faced a lifetime of imprisonment. Instead, Toliver was released in December

> 2014—eight months after his anticipated release date. He has
> not put forth any facts which show that he was prejudiced
> by this eight month difference.

*Id.* at 12–13.

Toliver alleges that the Wisconsin Court of Appeals made an unreasonable determination of the facts in this instance. He reasons that his testimony that he would not have taken the plea absent release in April 2014 stands uncontroverted. (Docket #12 at 8–9). Toliver would require the state court to rely upon some independent evidence in the record to contradict his statements or else take them at face value. *Id.* Accepting his testimony as true would, in turn, require this Court to undertake a *de novo* review of trial counsel's performance. *Id.*; *Carlson*, 526 F.3d at 1024.

Federal law foists no such obligation on the state courts, however. The state court was permitted to assess Toliver's credibility in light of the entire record presented. *See Morgan v. Hardy*, 662 F.3d 790, 799 (7th Cir. 2011). The Court can gainsay such an assessment only if clear and convincing evidence suggests it is wrong. 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 817–18 (7th Cir. 2012). The question is not whether this Court would have reached the same conclusion. *Burt*, 134 S. Ct. at 15.

Here, this Court cannot say that it was clearly wrong for the Wisconsin court to find Toliver's insistence on a trial either manufactured or overblown. Certainly his testimony was undermined by the encouragement of his family and counsel and the seriousness of the charges and penalties he faced if he elected to go to trial. These considerations afforded the Wisconsin Court of Appeals ample ground to reach the conclusion it did, even when weighed against the idea that the

State's case may have weakened through the passage of time. (Docket #12 at 9). Tellingly, Toliver did not hold that belief at his June 2013 sentencing; he thought all witnesses were living and available. (Docket #9-14 at 22). Thus, the court did not render an unreasonable determination of the facts when it found that Toliver would not have rejected the plea deal even with the release-date correction.

Because there was no clear factual error in the state court decision, the Court cannot engage in a *de novo* analysis of trial counsel's performance but must apply the AEDPA standard of review. Under that deferential standard, the Court finds that the Wisconsin court did not err in applying the teachings of *Strickland* and *Hill* in Toliver's case. The court reasonably found that Toliver had not demonstrated that he would not have pled guilty had he been equipped with correct information regarding his mandatory release date and, as a result, had not shown prejudice under *Hill*. It cannot be said that no fairminded jurist would agree with this conclusion. *Harrington*, 562 U.S. at 102. Consequently, this Court's powers of review are at their end.

4.    **CONCLUSION**

For the reasons stated above, the Court finds that Toliver's asserted grounds for relief are without merit. The petition must, therefore, be denied.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Toliver must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted).

As the Court's discussion above makes clear, while Toliver has had two successful bites at the habeas apple, his third attempt is undoubtedly too far a stretch. No reasonable jurists could debate whether his petition has merit. As a consequence, the Court is compelled to deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of November, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge